**Case No. 22-11776**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

SHILOH CHRISTIAN CENTER,

*Plaintiff-Appellant,*

*v.*

ASPEN SPECIALTY INSURANCE COMPANY,

*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the Middle District of Florida, Orlando Division
Case No. 6:20-cv-01174-CEM-LRH

_____

**APPELLEE'S ANSWER BRIEF**

_____

CHARLES R. RUMBLEY
Florida Bar No. 1018161
BENJAMIN J. RUSSELL
Florida Bar No. 1023443
400 Poydras Street, Suite 2300
New Orleans, LA 70130
Tel.: (504) 586-9292 | Fax: (504) 586-1290
crr@lcba-law.com; bjr@lcba-law.com

*Attorneys for Appellee, Aspen Specialty
Insurance Company*

Case No. 22-11776

Shiloh Christian Center, Inc., v. Aspen Specialty Ins. Co.

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, on behalf of Appellee, Aspen Specialty Insurance Company, the undersigned certifies that the following listed persons, parties, and corporations have an interest in the outcome of this appeal:

1.) The name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in a party to this action or in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to *any* party:

    a.  Aspen Specialty Insurance Company.

    b.  Aspen Specialty Insurance Company is a wholly-owned subsidiary of Aspen Insurance Holdings, Limited, which is a foreign company publicly traded on the New York Stock Exchange under the symbol "AHL."

    c.  Brooks-Jefferson, Pamela (Appellant's officer)

    d.  Deis, Christine M. (Appellant's counsel)

    e.  Dragon, Jeremy, Five Stay Claims Adjusting (Appellant's Public Adjuster)

    f.  Gordon, Haywood (spouse to Jacqueline Gordon)

Case No. 22-11776
Shiloh Christian Center, Inc., v. Aspen Specialty Ins. Co.

    g.  Gordon, Jacquelyn (Appellant's president)

    h.  Gordon-Edwards, Lashaunda (Appellant's officer/employee)

    i.  Mendoza, Carlos (District Judge)

    j.  New Shiloh Christian Center, Inc., f/k/a Shiloh Christian Center, Inc.

    k.  Nader, James (Appellee's counsel)

    l.  Rumbley, Charles (Appellee's counsel)

    m.  Russell, Benjamin (Appellee's counsel)

    n.  Lobman Carnahan (Appellee's counsel)

    o.  Struble, Matthew (Appellant's counsel)

    p.  Struble, P.A. (Appellant's counsel).

2.) the name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

    1.  None to Aspen's knowledge

I hereby certify that, except as disclosed above, I am unaware of any actual or potential conflict of interest involving the judges assigned to this case, and will immediately notify the Court in writing on learning of any such conflict.

*/s/ Charles R. Rumbley*
**CHARLES R. RUMBLEY**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee, Aspen Specialty Insurance Company, requests oral argument pursuant to Fed. R. App. 34(a). This appeal involves a complex factual record and raises significant issues of insurance policy interpretation and application of case law. Appellee submits that an understanding of the factual record and adjudication of the issues presented would be aided by oral argument.

# **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ........................................................................i

Table of Contents .................................................................................................... ii

Table of Citations....................................................................................................iv

Jurisdictional Statement ........................................................................................ vii

Statement of the Issues Presented for Review .........................................................1

Statement of the Case...............................................................................................2

    I.     The Course of Proceedings and Dispositions
          in the Court Below..........................................................................2

    II.    Statement of Facts ..........................................................................2

    III.   Standard of Review ........................................................................7

Summary of the Argument........................................................................................7

Argument...................................................................................................................9

    I.     Legal Standard................................................................................9

    II.    Coverage for "Interior Water Caused by Rain" is Immaterial
          to this Matter Because Shiloh Only Alleges Damages Caused
          by Named Windstorms .................................................................10

    III.   The District Court Correctly Interpreted the Policies Under
          Florida Law to Find No Coverage for Named Windstorm .....................13

          A. The District Court Construed the Terms of the Policies
             According to Section 627.419(1) of the Florida Statutes and
             Consistent with the Intent of the Parties .............................................13

B. The Deductible Provisions and References to Named
    Windstorms Do Not Create Ambiguities as to Eliminate
    the Policy's Exclusion of Named Windstorm Coverage ...................17

C. The 2015 Endorsement Removing Named Windstorm
    Coverage Remained in Effect During the 2016-2017 and
    2017-2018 Policy Periods as These Policies Were Renewals
    of the 2015-2016 Policy ....................................................................20

Conclusion ........................................................................................................21

Certificate of Compliance ...............................................................................23

Certificate of Service .......................................................................................24

## <u>TABLE OF CITATIONS</u>

**Cases**                                                                                                      **Page(s)**

*Allen v. Tyson Foods, Inc.*,
    121 F.3d 642 (11th Cir. 1997) .........................................................................9

*All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*,
    222 F.3d 895, 901 (11th Cir. 2000) ..............................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................9, 10

*Clark v. Coats & Clark, Inc.*,
    929 F.2d 604 (11th Cir. 1991) .........................................................................9

*Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*,
    711 So. 2d 1135 (Fla. 1998) ..........................................................................17

*Friedman v. Va. Metal Prods. Corp.*,
    56 So.2d 515 (Fla. 1952) ...............................................................................14

*James River Ins. Co. v. Ground Down Eng'g, Inc.*,
    540 F.3d 1270 (11th Cir. 2008) .....................................................................14

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
    264 F. Supp. 3d 1294, 1300 (M.D. Fla. 2017),
    aff'd, 920 F.3d 704 (11th Cir. 2019)..............................................................16

*Legg v. Voice Media Grp., Inc.,*
    20 F. Supp. 3d 1370 (S.D. Fla. 2014).............................................................9

*Marchesano v. Nationwide Prop. & Cas. Ins. Co.*,
    506 So. 2d 410 (Fla. 1987) ............................................................................20

*Mathews v. Ranger Ins. Co.*,
    281 So. 2d 345 (Fla. 1973) ............................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................9

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*,
    320 F.3d 1260 (11th Cir. 2003) ..........................................7

*Penzer v. Transp. Ins. Co.*,
    545 F.3d 1303 (11th Cir. 2008) ........................................19

*Port Consol., Inc. v. Int'l Ins. Co. of Hannover, PLC*,
    826 F. App'x 822 (11th Cir. 2020) ...................................18

*Siegle v. Progressive Consumers Ins.*,
    819 So. 2d 732 (Fla. 2002) ...............................................13

*State Farm Mut. Auto. Ins. Co. v. Mallard*,
    548 So. 2d 733 (Fla. Dist. Ct. App. 1989)..................14, 19

*Strama v. Union Fid. Life Ins. Co.*,
    793 So. 2d 1129 (Fla. Dist. Ct. App. 2001)......................14

*Walker v. Darby*,
    911 F.2d 1573 (11th Cir. 1990) ..........................................9

*Westport Ins. Corp. v. VN Hotel Grp., LLC*,
    No. 6:10-cv-222-ORL-28KRS, 2011 WL 4804896 (M.D. Fla. Oct. 11,
    2011), aff'd, 513 F. App'x 927 (11th Cir. 2013)..............13

*Zenith Ins. Co. v. Com. Forming Corp.*,
    850 So. 2d 568 (Fla. Dist. Ct. App. 2003)..................14, 20

## Statutes

28 U.S.C. § 1229 ..................................................................... ii

28 U.S.C. § 1332(a).................................................................. ii

28 U.S.C. § 1441 ..................................................................... ii

Fla. Stat. § 627.419 ............................................................................14, 21

**Rules**

Fed. R. Civ. P. 56(c)..................................................................................9

## **JURISDICTIONAL STATEMENT**

Plaintiff-Appellant, Shiloh Christian Center, ("Shiloh"), filed suit against Defendant-Appellee, Aspen Specialty Insurance Company, ("Aspen"), in the Circuit Court of the 18th Judicial Circuit in and for Brevard County, Florida, on September 1, 2020. Doc. 1-2. Aspen removed the suit to United States District Court for the Middle District of Florida on September 9, 2020, pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441, based on diversity jurisdiction and an amount in controversy exceeding $75,000.00. Doc. 1. The District Court entered judgment granting summary judgment in favor of Aspen on May 10, 2022. Doc. 42. Shiloh filed a Notice of Appeal on May 26, 2022. Doc. 44. This Court has jurisdiction over this matter as an appeal over a final decision of the District Court pursuant to 28 U.S.C. § 1229.

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the District Court correctly determined the subject policies of insurance did not provide coverage for damages arising from Hurricanes Matthew and Irma.

II.    Whether the District Court correctly found Shiloh's argument that it suffered "interior damages caused by rain" as a cause of loss separate from Hurricanes Matthew and Irma was contrary to Shiloh's own allegations and the evidence on record.

## STATEMENT OF THE CASE

**I.  The Course of Proceedings and Dispositions in the Court Below:**

On September 1, 2020, Plaintiff-Appellant, Shiloh Christian Center ("Shiloh"), filed a breach of contract and declaratory action against Defendant-Appellee, Aspen Specialty Insurance Company ("Aspen"). Doc. 1-2.  Shiloh alleges its property located at 3900 Sarno Road, Melbourne, Florida sustained damages as a result of Hurricanes Matthew and Irma. Doc. Id.  Aspen removed the case to the United States District Court, Middle District of Florida, on September 29, 2020. Doc. 1.  Shiloh and Aspen filed Motions for Summary Judgment on October 28, 2021, and November 1, 2021, respectively. Doc. 24, Doc. 25.  On May 9, 2022, the District Court denied Shiloh's Motion for Summary Judgment and granted Aspen's Motion for Summary Judgment, finding no coverage for Shiloh's claims as the policies excluded named windstorms as covered perils. Doc. 41 at 13-14.  Judgment was entered in favor of Aspen by the Clerk of the District Court on May 10, 2022. Doc. 42.

**II.  Statement of Facts:**

In 2014, Shiloh purchased a policy of insurance issued by Aspen. Doc. 25-1. Shiloh had originally operated a church and daycare at one location, the "University Boulevard" location, and had purchased the Sarno Road location, to which Shiloh was in the process of moving its operations. Doc. 25-2 at 11-12, 16-17.  After renewing the policy, Shiloh began exploring options to lower its insurance premiums in the summer

of 2015. Jacquelyn Gordon, Shiloh's founder, Senior Pastor, and Board President, stated she decided to remove named windstorm coverage for the Sarno Road location because she believed it was not necessary due to its tilt-wall construction. Id. at 75, 97-98. On May 29, 2015, Shiloh's insurance agent contacted the surplus lines broker, Burns & Wilcox, and inquired about removing named windstorm coverage from the policy to reduce the premium. The agent indicated Shiloh had asked, "what the policy's premium would be without hurricane coverage . . ." Doc. 25-3 at 3. Burns & Wilcox informed Shiloh's agent that Aspen could provide coverage "excluding Named Storm for $32k. (This will exclude coverage on all Named hurricanes and Tropical storms, but allow coverage for tornadoes and heavy wind/rain storms that are not named)" and asked Shiloh's agent if she wanted Burns & Wilcox to get a formal quote for this coverage option. Id. at 5. Shiloh's agent asked for a formal quote from Aspen, stating the exclusion of named storm coverage "would be a good selling point." Id. Aspen notified Burns & Wilcox it would issue a return premium to Shiloh if named windstorm coverage was removed from the policy. Id. at 6. On July 30, 2015, Shiloh's agent instructed Burns & Wilcox to "proceed as per the insured" with removing named windstorm coverage retroactive to July 16, 2015, and to issue the return premium. Id. at 8-9.

On August 14, 2015, the return premium and endorsement excluding named windstorm coverage was forwarded to Shiloh's agent. Doc. 25-3 at 10-11. The endorsement issued by Aspen states:

> It is understood and agreed effective 7/16/2015, the following change is made to this policy:
>
> **Named Windstorm** coverage is removed from this policy.
>
> All Other Windstorm and / or Hail coverage remains subject to a $25,000 minimum each and every occurrence.

Doc. 25-4. Aspen refunded $15,912.15 of the original $48,545.00 premium upon removing named windstorm coverage effective July 16, 2015. Doc. 25-3 at 10-11; Doc 25-5 at 4.

For the 2016-2017 renewal policy, which encompassed Hurricane Matthew, Shiloh submitted an application which stated the "Ex Wind" "form and condition" would apply. Doc. 25-7. Initially, Aspen provided a quote to Burns & Wilcox that did not include the reduced premium for removal of named windstorm coverage in July 2015. Doc. 25-3 at 12. Thereafter, Burns & Wilcox revisited the issue and told Shiloh's agent, "In reviewing the quote, we realized the premium looks high given the changes we made midterm last year. (We removed the Named Windstorm coverage from the policy). We wanted to make sure that Aspen brought over the changes to the renewal quote and asked the underwriter to confirm." Id. at 13. Aspen then issued a revised quote, which was provided to Shiloh's agent by the broker, who stated the renewal

policy "offers coverage for wind but excludes Named Storms," and that this was the "same coverage provided after the Return Premium endorsement was issued last year." Id. at 15. The revised quote indicated, "All Risk of Direct Physical Loss or Damage excluding Flood, Earthquake, and Named Windstorm" as the covered perils. Doc. 25-6 at 3. The 2016-2017 premium was $22,500.00. Id at 4. This is less than half of the original 2015-2016 premium prior to removal of named windstorm coverage. Id. at 4; Doc. 25-5 at 4. It is undisputed that Shiloh saved over twenty thousand dollars annually in premium for the removal of named windstorm coverage. Aspen issued a binder for the 2016-2017 policy period again listing, "All Risk of Direct Physical Loss or Damage excluding Flood, Earthquake and Named Windstorm." Doc. 25-9 at 2. Aspen subsequently issued Policy No. PRADXWL16, a renewal of PRADXWL15, effective from February 21, 2016, to February 21, 2017. Doc. 25-10. However, the endorsement originally issued in August 2015 was not appended to the PRADXWL16 policy forms.

For the 2017-2018 renewal period encompassing Hurricane Irma, the application, quote, and binder included the same language regarding the cover perils and exclusion of named windstorm coverage. Doc. 25-11; Doc. 25-13; Doc. 25-12 at 2. The endorsement originally removing named windstorm coverage was not attached to the policy forms provided to Shiloh for the 2017-2018 renewal; however, the 2017-2018 premium was again $22,500.00, less than half the premium prior to

the removal of named windstorm coverage in 2015. Doc. 25-13 at 3. At no point after the August 14, 2015, endorsement removing coverage for named windstorm did Shiloh make any attempt to have named windstorm coverage reinstated or otherwise change the coverages under the policy. Doc. 25-17 at ¶6; Doc. 25-2 at 98-99.

After Hurricane Matthew, Aspen received notice of a claim from Shiloh for "Water Damage from Roof hurricane Matthew" with an October 7, 2016, date of loss. Doc 25-15. Shiloh's maintenance person, Bufus Jefferson, later claimed in his deposition that there were no leaks at the property prior to Hurricane Matthew and that he observed water leaking through the ceiling during the hurricane. Doc. 24-4 at 44, 31-32. After investigating the claim, Aspen issued a denial due to coverage issues regarding deferred maintenance, the lack of wind damage to the roof, and the lack of coverage for damage resulting from named windstorms. Doc. 25-16.

On September 12, 2018, Aspen received an Assignment of Benefits contract from public adjuster, Five Star Claims Adjusting regarding an alleged Hurricane Irma loss occurring one year earlier, on September 11, 2017. Doc. 25-18. Jefferson again claimed he observed damages to the building's roof corresponding to interior water and ceiling tile damage after Hurricane Irma. Doc. 24-4 at 54-63. After investigating the Hurricane Irma claim, Aspen issued a denial citing the same deterioration, wear, and tear observed after Hurricane Matthew, the re-presentation

of damage asserted in prior losses, and the policy's lack of coverage for named windstorm. Doc. 25-19. The lawsuit followed.

## III.    Standard of Review

The Court reviews orders granting summary judgment de novo, applying the same legal standards that bound the district court. *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

## <u>SUMMARY OF THE ARGUMENT</u>

The District Court correctly granted summary judgment in Aspen's favor because the subject policies did not provide coverage for damages caused by named windstorms. Shiloh's lawsuit seeks damages allegedly caused by Hurricanes Matthew and Irma under coverage Shiloh did not purchase. In July 2015, Shiloh asked Aspen to remove named windstorm coverage from the policy in exchange for lower premiums. Aspen complied with Shiloh's request by issuing an endorsement removing named windstorm coverage from the policy, returning approximately $15,000 in premium to Shiloh, and reducing premiums in future renewal policies by approximately $20,000 per year. Shiloh never requested that named windstorm coverage be reinstated. The renewal applications, quotes, and binders for the Hurricane Matthew and Hurricane Irma policy periods all reflect the lack of coverage for named windstorms and the lower premiums Shiloh received in exchange. Although the endorsement itself was not attached the policy forms for the Hurricane Matthew

7

and Irma policy periods, the District Court correctly interpreted the policies to reflect the intent of the parties as evidenced by Shiloh's bargaining for the removal of named windstorm coverage, the endorsement issued, the representations made by Shiloh in renewing the policies, and the reduced premiums paid by Shiloh for the coverage during the applicable renewal periods.

The District Court also correctly rejected Shiloh's eleventh-hour attempt to recast its alleged losses as "interior water damage caused by rain" instead of damages caused by Hurricanes Matthew and Irma. Contrary to Shiloh's assertions, the District Court made no finding regarding coverage for water intrusion through openings in a roof. Rather, the District Court rejected Shiloh's argument because Shiloh submitted these claims with Hurricanes Matthew and Irma as the only causes of loss, not as damages caused by rain or any other source. Shiloh's Complaint alleges the property sustained damage resulting from Hurricanes Matthew and Irma. Shiloh's maintenance person stated in the same deposition testimony cited by Shiloh that the interior damages resulted from roof damage caused by the hurricanes. Shiloh's own expert opined the interior water damage was caused by roof penetrations caused by Hurricanes Matthew and Irma. The District Court found there is no coverage for any alleged interior damage caused by openings in the roof created by Hurricanes Matthew and Irma because the policies do not cover damage resulting from named windstorms, not because it made any finding regarding a separate and inapplicable limitation provision.

8

## ARGUMENT

### I.    Legal Standard

Summary judgment "shall be granted, 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added). A fact is material when, under the substantive governing law, it affects the outcome of the case. Id. at 248.

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Legg v. Voice Media Grp., Inc.,* 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014). The nonmoving party "may not rest upon the mere allegations or denials in its pleadings"

9

but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23 ("In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## II. Coverage for "Interior Water Caused by Rain" is Immaterial to this Matter Because Shiloh Only Alleges Damages Caused by Named Windstorms

Shiloh's first "Issue Presented for Review" mischaracterizes the District Court's ruling and relies on assertions that are contrary to the claim Shiloh presented to Aspen, the allegations of Shiloh's Complaint, and the evidence on record. Shiloh argues the District Court erred "by finding that the policies in effect during Hurricane Matthew and Hurricane Irma excluded coverage for interior water damage caused by rain." However, the District Court made no such finding. Instead, the Court rejected Shiloh's attempt to claim rain as a cause of loss for the first time in its motion for summary judgment. As the Court noted:

> Plaintiff does not appear to dispute that the damage it claimed under the policies resulted from "named windstorms." Indeed, the claims submitted to Defendant specifically listed "Hurricane Matthew" and "Hurricane Irma" as the *only* cause of the damage without any other

10

> additional cause listed. (Doc. Nos. 25-15, 25-18). Plaintiff attempts to
> argue in its Motion that, in addition to damage caused by a named
> windstorm, the building suffered "interior damage caused by rain."
> (Plaintiff's Motion at 16). But the record shows that the only cause of
> damage listed by Plaintiff on each of its actual claims to Defendant was
> the named windstorm itself, nothing else. (Doc. Nos. 25-15, 25-18). It
> is only "evidence" and not "a lawyer's arguments" that can "do the
> trick" on summary judgment. *See Shenzhen Kinwong Elec. Co., Ltd. v.
> Kukreja*, 18-61550-CIV, 2021 WL 5834244, at *33 (S.D. Fla. Dec. 9,
> 2021).

Doc. 41, at 11, n. 3.

Shiloh's argument relies on Aspen's reference to the following policy

limitation in its letters denying the claims:

> *The following limitations apply to all policy forms and endorsements,
> unless otherwise stated.*
>
> ***1.*** *We will not pay for loss of or damage to property, as described and
> limited in this section. In addition, we will not pay for any loss that is a
> consequence of loss or damage as described and limited in this section.*
>
> **\*\*\*\***
>
> c. The interior of any building or structure, or to personal property in
> the building or structure, caused by or resulting from rain, snow, sleet,
> ice, sand or dust, whether driven by wind or not, unless:
>
> ***(1)*** *The building or structure first sustains damage by a Covered Cause
> of Loss to* its roof or walls through which the rain, snow, sleet, ice, sand
> or dust enters . . .

Doc. 25-10 at 46; Doc. 25-14 at 47. Shiloh argues Aspen's reference to this policy

provision in the denial letters is akin to admission of coverage because Shiloh's

property allegedly sustained interior water damage. However, the limitation

11

provision is clear that there must be damage to the property's roof or walls from a Covered Cause of Loss. Shiloh's Property Loss Notice from Hurricane Matthew describes the loss as, "Water damage from roof Hurricane Matthew." Doc. 25-15. As pointed out by Shiloh in its Brief, Bufus Jefferson, Shiloh's maintenance employee, stated there were no roof leaks at the property prior to Hurricane Matthew. Doc. 24-4 at 44. He was present during Hurricane Matthew and claims to have seen water coming into the interior of the building during the storm. Id. at 31-32. He observed water leaking through the acoustic ceiling tiles. Id. The day after Hurricane Matthew passed, Jefferson went on the roof to find the source of the interior water damage and found sheets of roofing materials lifted and folded back over the areas where most of the interior water damage was observed. Id. at 39-40.

Shiloh gave notice of its Hurricane Irma claim to Aspen through its Public Adjuster, listing "Hurricane Irma" as the Cause of Loss and the date of Hurricane Irma's landfall as the date of loss. Doc. 25-18. Jefferson stated he again observed damages to the building's roof corresponding to interior water and ceiling tile damage after Hurricane Irma. Doc. 24-4 at 54-63. Shiloh's expert engineer, Freddy Andrade, opined the "interior water damage was caused by roof penetrations which were storm induced openings in the building envelope," and "the roof system sustained wind damage caused by Hurricane Matthew which was exacerbated by Hurricane Irma . . ." Doc. 24-8 at ¶¶7-8.

12

Under the clear terms of the policy, there is no coverage for interior damage from rain unless the roof or walls first sustain damage from a covered cause of loss. Shiloh's notices of loss to Aspen, its Complaint, the testimony of its maintenance employee, and its expert all assert Hurricanes Matthew and Irma as the causes of the alleged damages to the roof and interior of the property. Shiloh offers no other event as a cause of loss that damaged the roof and resulted in interior water damage. Shiloh has only now seized on rain itself as a cause of loss in an attempt to establish coverage in the absence of coverage for the cause of loss it has asserted since the beginning of these claims: Hurricanes Matthew and Irma. Damages due to named windstorm are not covered.

## III. The District Court Correctly Interpreted the Policies Under Florida Law to Find No Coverage for Named Windstorm

### A. The District Court Construed the Terms of the Policies According to Section 627.419(1) of the Florida Statutes and Consistent with the Intent of the Parties

"Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Westport Ins. Corp. v. VN Hotel Grp., LLC*, No. 6:10-cv-222-ORL-28KRS, 2011 WL 4804896, at *2 (M.D. Fla. Oct. 11, 2011), aff'd, 513 F. App'x 927 (11th Cir. 2013) (quotation omitted). The terms of an insurance policy "should be taken and understood in their ordinary sense, and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or

13

unrealistic construction." *Siegle v. Progressive Consumers Ins.*, 819 So. 2d 732, 736 (Fla. 2002).

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and ***amplified, extended, or modified by any application therefor or any rider or endorsement thereto***." Fla. Stat. § 627.419 (emphasis added). "The application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance." *Mathews v. Ranger Ins. Co.*, 281 So. 2d 345, 348 (Fla. 1973); *Zenith Ins. Co. v. Com. Forming Corp.*, 850 So. 2d 568, 570 (Fla. Dist. Ct. App. 2003). "Where the policy is 'amplified, extended, or modified' by inconsistent terms or conditions in the application, the inconsistent provisions are not disregarded. Rather, the policy is then construed taking into consideration those provisions." *State Farm Mut. Auto. Ins. Co. v. Mallard*, 548 So. 2d 733, 735 (Fla. Dist. Ct. App. 1989) "[W]hen the terms of the contract are ambiguous, susceptible to different interpretations, parol evidence is admissible to "explain, clarify or elucidate" the ambiguous term." *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. Dist. Ct. App. 2001), quoting *Friedman v. Va. Metal Prods. Corp.*, 56 So.2d 515, 517 (Fla. 1952). Even when the construction of a provision is ambiguous, "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the

intentions of the parties." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).

Shiloh argues the District Court erred by "finding that the insurance applications and binders controlled over the terms and conditions of the policies in effect during Hurricane Matthew and Hurricane Irma." Appellant's Brief at 20. However, the court did not make such a bright-line ruling that any one portion of the policy "controlled" over another. Instead, the court construed the policy considering the applications, endorsements, and intent of the parties as required by Fla. Stat. Ann. § 627.419 and applicable case law to find the insurance contract bargained for by the parties excluded coverage for the damages allegedly caused by Hurricanes Matthew and Irma.

Shiloh clearly intended to remove named windstorm coverage from its 2015-2016 policy with Aspen and to retain the same coverage during the renewal policies encompassing Hurricanes Matthew and Irma. During the 2015 refinancing of its property, Shiloh affirmatively sought to reduce its premiums and instructed its agent to inquire about removing coverage for named windstorms. Doc. 25-3 at 3. Aspen informed Shiloh it could remove the coverage and issue a return premium that would effectively cut Shiloh's annual premiums in half. Id. at 5. At Shiloh's instruction, named windstorm coverage was removed from the policy effective July 16, 2015, and Aspen returned $16,545.00 to Shiloh. Id. at 10-11; Doc. 25-5.

15

The application and renewal for the 2016-2017 period that encompassed Hurricane Matthew also reflected the parties' intent not to purchase, or provide, coverage for named windstorms. During the renewal, Shiloh's agent discussed Aspen's initial quote as being too high because it did not reflect the changes in coverage made in 2015. Doc. 25-3 at 13. The broker stated she "wanted to make sure that Aspen brough over the changes to the renewal quote . . ." Id. Aspen's revised renewal quote was relayed to Shiloh's agent explicitly stating the renewal policy "excludes Named Storms," and provided the "same coverage provided after the Return Premium endorsement was issued last year." Id at 15.

During the renewal for the 2017-2018 period that encompassed Hurricane Irma, Aspen provided a quote that again explicitly excluded named windstorm coverage. Doc. 25-13 at 2. For both of these policy periods, Shiloh paid the premiums reflected on the quotes, which were less than half the annual premium of the 2015-2016 policy prior to the removal of named windstorm coverage. Shiloh never requested named windstorm coverage be reinstated and never paid an increased premium for such coverage.

"The touchstone of contract interpretation is the intent of the parties*." Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 264 F. Supp. 3d 1294, 1300 (M.D. Fla. 2017), aff'd, 920 F.3d 704 (11th Cir. 2019). "In construing a contract, the intention of the parties is paramount and the court will adopt an

16

interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 901 (11th Cir. 2000). "[I]nsurance policies will not be construed to reach an absurd result. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998). Shiloh clearly intended to remove named windstorm coverage from its policy in July 2015. Its applications for the renewal of its policy in 2016 and 2017, as well as its payment of reduced premiums, reflect Shiloh's intent to continue with the same coverage that excluded damages caused by named windstorms. To find coverage for named windstorms after Shiloh affirmatively bargained to remove the coverage and sought the same coverage during the policy renewals would be a strained and absurd interpretation of the policies contrary to the parties' intent. The District Court correctly rejected such an interpretation of the policy.

### B. The Deductible Provisions and References to Named Windstorms Do Not Create Ambiguities as to Eliminate the Policy's Exclusion of Named Windstorm Coverage

Shiloh asserts Aspen is relying on the deductible provisions of the 2016-2017 and 2017-2018 policy forms to exclude coverage for named windstorms, but Aspen has never claimed these provisions alone serve to exclude the coverage. Rather, as discussed above, it is the intent of the parties evidenced by the original endorsement

17

and renewal applications that establish no coverage existed for named windstorms at the time of Hurricanes Matthew and Irma. These provisions set deductibles and serve to confirm there is no coverage for named windstorm rather than establish or exclude coverage standing alone. Regardless, the deductible provisions are not ambiguous when considered in conjunction with the binders and quotes obtained during the renewal applications. The quotes and binders from both policy periods indicate named windstorm is excluded as a covered peril. Doc. 25-6; Doc. 25-9; Doc. 25-13; Doc. 25-12. The 2015-2016 deductible provision uses the same language regarding named windstorms contained in the quote and binder. The 2016-2017 deductible provision does not include the same parenthetical reference to named windstorms, but it is not necessary to state a deductible for a cause of loss that is not covered under the policy. This is the sort of parol evidence that can be considered when evaluating the intent of the parties as to the coverage afforded by Aspen. It would be a strained interpretation to find a reference to the exclusion of named windstorm coverage in the 2015-2016 deductible provision, or the lack of a stated deductible for a non-covered cause of loss in the 2016-2017 deductible provision, eliminates the exclusion of named windstorm coverage from the policy.

Shiloh also argues the term "Named Windstorm" itself is ambiguous because it is not defined in the policy forms. However, under Florida law, "when an insurance coverage term is not defined, the term should be given its plain and

ordinary meaning." *Port Consol., Inc. v. Int'l Ins. Co. of Hannover, PLC*, 826 F. App'x 822, 826 (11th Cir. 2020). "Policy terms are given their plain and ordinary meaning and read in light of the skill and experience of ordinary people." *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir. 2008). Parol evidence is admissible to interpret potentially ambiguous policy terms. *Strama*, 793 So. 2d at 1132. Unfortunately, hurricanes and tropical are a common occurrence in Florida. An ordinary Florida resident knows through their own skill and experience that tropical storms and hurricanes have names whereas other windstorms do not. The contention that the term "Named Windstorm" does not include two named hurricanes is illogical. Further, correspondence with Shiloh's agent during the application process for the policy clearly indicates Shiloh understood that it was bargaining for the removal of coverage that would encompass hurricanes. Doc. 25-3 at 3 ("[t]he insured has contacted me regarding this policy. They would like to know what the premium would be without hurricane coverage . . ."); Id. at 5 ("Aspen is able to offer All peris, excluding Named Storm for $32k. (This will exclude coverage on all Named hurricanes and Tropical storms, but allow coverage for tornadoes and heavy wind/rain storms that are not named.)".) Shiloh cannot claim the term "named windstorm" is ambiguous in the face of its own bargaining for the removal of the coverage and the plain meaning of the term to any ordinary Florida resident.

**C. The 2015 Endorsement Removing Named Windstorm Coverage Remained in Effect During the 2016-2017 and 2017-2018 Policy Periods as These Policies Were Renewals of the 2015-2016 Policy**

Barring any indication to the contrary, the parties to the renewal of an insurance contract are "entitled to assume that the terms of the renewed policy are the same as those of the original contract." *Marchesano v. Nationwide Prop. & Cas. Ins. Co.*, 506 So. 2d 410, 413 (Fla. 1987); *Zenith Ins. Co.,* 850 So. 2d at 570. The endorsement originally removing named windstorm coverage became part of Policy Number PRADXWL15 when Shiloh's agent instructed Aspen to issue the endorsement and the return premium was paid. Doc. 25-3 at 8; Doc. 25-4; Doc. 25-3 at 11. During the first renewal, Shiloh's agent assured Shiloh the 2016-2017 policy would reflect the continued exclusion of named windstorm coverage and lower premium pursuant to the endorsement. Doc. 25-3 at 13, 15. The renewal quote reflected the exclusion of named windstorm coverage. The 2017-2018 quote also indicated there was no coverage for named windstorms. Doc. 25-6. Policy Number PRADXWL16, the 2016-2017 policy encompassing Hurricane Matthew, is denoted as a "Renewal of: PRADXWL15." Doc. 25-10 at 1. Likewise, Policy Number PRADXWL17, the 2017-2018 policy encompassing Hurricane Irma, is denoted as a "Renewal of: PRADXWL16." Doc. 25-14 at 1. There was no indication the renewals of the Aspen policies would reinstate named windstorm coverage. The premiums were never increased to reflect a change in coverage. As Shiloh agreed

to the renewals pursuant to quotes indicating named windstorm coverage would continue to be excluded from coverage and paid the premiums reflecting the lack of this coverage, it is clear the parties understood the renewal policies would not cover named windstorms.  At no point did Shiloh purchase named windstorm coverage for Hurricanes Matthew and Irma, and it cannot now avail itself of coverage it did not buy.

## CONCLUSION

The District Court correctly construed the Aspen policies in accordance with Fla. Stat. § 627.419(1) and relevant case law, finding the inclusion of named windstorm coverage when Shiloh affirmatively bargained to remove such coverage would be to reach a strained and absurd result contrary to the parties' intent.  The District Court also rejected Shiloh's eleventh-hour attempt to recast its claims as arising from causes other than Hurricanes Matthew and Irma.  Accordingly, the District Court's ruling should be affirmed.


Date:  August 23, 2022

Respectfully submitted,

**LOBMAN, CARNAHAN, BATT,
ANGELLE & NADER**

_/s/ Charles R. Rumbley_
**CHARLES R. RUMBLEY**

21

Florida Bar No. 1018161
**BENJAMIN J. RUSSELL**
Florida Bar No. 1023443
400 Poydras Street, Suite 2300
New Orleans, LA 70130
Tel.: (504) 586-9292 | Fax: (504) 586-1290
Primary: crr@lcba-law.com
Secondary: FLService@lcba-law.com

*Attorneys for Aspen Specialty Insurance
Company*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32 (a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,054 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

_____ */s/ Charles R. Rumbley* _____
**CHARLES R. RUMBLEY**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been furnished to Matthew G. Strubel and Christine Deis, counsel for Appellant, via the Court's ECF filing system, on this 23rd day of August, 2022, to the designated addresses: mstruble@strublelawfirm.com and cdeis@strublelawfirm.com.


*/s/ Charles R. Rumbley*
**CHARLES R. RUMBLEY**